COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and Senior Judge Clements
Argued at Richmond, Virginia


KIRKLAND CRIST MORRIS
                                                    OPINION BY
v.        Record No. 1133-10-2            JUDGE RANDOLPH A. BEALES
                                                OCTOBER 18, 2011
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Burnett Miller, III, Judge

Peter B. Baruch (Parcell & Webb, P.C., on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General; Richard B. Smith, Special Assistant
Attorney General, on brief), for appellee.


Kirkland Crist Morris (appellant) was convicted by the trial court of criminal street gang

participation under Code § 18.2-46.2.[1]  On appeal, appellant argues that the evidence was

insufficient to prove beyond a reasonable doubt that he knowingly and willfully participated in a

predicate criminal act for the benefit of, at the direction of, or in association with a criminal

street gang.  For the following reasons, we affirm this conviction of appellant by the circuit

court.

---

[1] Appellant was also convicted at trial of assault or battery by mob, in violation of
Code § 18.2-42, and malicious wounding by mob, in violation of Code § 18.2-41.  Appellant has
not challenged the conviction for assault or battery by a mob, and, although appellant argued in
his petition for appeal that the evidence was insufficient to support his conviction for malicious
wounding by a mob, an appeal was not granted on that issue.  Therefore, we consider only
appellant's assignment of error challenging his conviction for criminal street gang participation.

I.  BACKGROUND

Appellant, who is a member of a Bloods gang, was at a party with several members of the Crips, a criminal street gang, on the evening of February 21, 2009 and in the early morning of February 22, 2009, at Nottingham Green Apartments in Henrico County.  Mentor Bislimi (appellant's co-defendant) was the leader of the Crips gang at the party.  Bislimi and the other Crips were wearing their blue gang colors and bandanas that evening.

According to Hakeem Johnson, a Crips member, appellant was a part of a group discussion amongst Crips members at the party about "going on gang missions and stuff."  At some point in the discussion, Bislimi ordered David Blackeney, one of the Crips members, to attack people so that he could improve his "status in the gang."  Bislimi also directed the people with him, including appellant, to attack a number of people.  Appellant participated in these attacks.[2]

Near the conclusion of their night's activities, at about 1:15 a.m. on February 22, 2009, the group saw two men and one woman walking through the Nottingham Green Apartments complex.  The group, including appellant, attacked the two men – and one of these victims was taken to the hospital with facial and shoulder injuries.  This particular attack was expressly done to help increase the rank of a particular member of the Crips – Tyler Addison.  After this final attack, Bislimi, appellant, and the rest of the group ran away and got into a car that belonged to appellant's friend.  In the car, appellant said, "we beat his ass."

Blackeney testified at trial that Crips and Bloods can be friends and they can work together.  Although appellant was not a Crip, Blackeney also testified that appellant "still participated" in the gang activity that evening.  Johnson confirmed in his testimony that a Blood

---

[2] Johnson testified that he himself attempted to separate from the group committing the attacks, but that the group threatened that he would become the next victim if he did not participate in the evening's "mission."

"help[ed] a Crip for his missions" that night. Jaquan Payne also testified that all the attacks that evening were designed to help people improve their rank in the Crips and that appellant participated in the attacks. Investigator D.C. Wood, testifying as an expert on gangs in Virginia, testified that Bloods and Crips are "basically rivals" and usually do not work together. However, he also explained that, although it would be unusual, a Blood could improve his rank in that gang by working with Crips.

In his motion to strike at the close of the Commonwealth's case, appellant argued, *inter alia*, that he was simply present with the Crips, "not helping them" and "not achieving any ranks." Appellant then rested without putting on any evidence, and he renewed his motion to strike. He argued again that the evening's activities were Crips-related – not Bloods-related – which was insufficient evidence to prove that he was associated with the gang. However, the trial court found that the "entire evening . . . these individuals were together, they were acting together." In addition, the trial court found that "even though Mr. Morris is a Blood as opposed to a Crip, he was acting in concert with these other individuals in this, and he knew well that they were Crips as opposed to Bloods and vice versa, and that their activities were in association."

## II. ANALYSIS

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting

Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

A person is guilty of criminal street gang participation if that person "actively participates in or is a member of a criminal street gang and . . . knowingly and willfully participates in any predicate criminal act[3] committed for the benefit of, at the direction of, or in association with any criminal street gang." Code § 18.2-46.2(A). The Supreme Court of Virginia has stated that "[t]he offense of participating in a criminal street gang contains three elements that the Commonwealth must prove to sustain a conviction under the statute." Hamilton v. Commonwealth, 279 Va. 94, 108, 688 S.E.2d 168, 177 (2010). "First, a person must actively participate in or be a member of a criminal street gang. Second, the person must knowingly and willfully participate in a predicate criminal act. Third, the act must be committed for the benefit of, at the direction of, or in association with the gang." Id.

On appeal, appellant argues that "the Commonwealth has failed to prove the third element" of an offense under Code § 18.2-46.2(A). Specifically, appellant contends that "the evidence failed to prove that [appellant], a Blood, was guilty beyond a reasonable doubt, of acting for the benefit of, at the direction of, or in association with the Crips" on the evening of February 21, 2009 and the early morning hours of February 22, 2009. Therefore, on appeal in this case, we consider only whether the evidence proved that appellant acted for the benefit of, at the direction of, or in association with the Crips during that time period. Code § 18.2-46.2(A).

---

[3] Whether a "[p]redicate criminal act" (as defined by Code § 18.2-46.1) occurred is not at issue in this appeal.

To be punishable under Code § 18.2-46.2(A), the predicate criminal act must be "committed for the benefit of, at the direction of, *or* in association with any criminal street gang." (Emphasis added). Thus, under the plain language of Code § 18.2-46.2(A), the Commonwealth in this case was required to prove that the predicate criminal act appellant participated in with the Crips gang was committed "for the benefit of" *or* "at the direction of" *or* "in association with" the Crips gang. See Bunch v. Commonwealth, 225 Va. 423, 442, 304 S.E.2d 271, 282 (1983) ("[T]he use of the disjunctive word 'or,' rather than the conjunctive 'and,' signifies the availability of alternative choices.").

Here, the trial court specifically found that appellant acted "in association with" the Crips members in the attacks that occurred here – i.e., committing a predicate criminal act under the criminal street gang participation statute. This factual finding by the trial court that appellant acted in association with the Crips will not be disturbed on appeal unless it was plainly wrong or unsupported by the evidence. Code § 8.01-680. Challenging the trial court's finding here, appellant asserts that he did not share the Crips members' purpose for the attacks – "to gain or improve rank within the Crips." According to appellant, to act "in association with" a criminal street gang, one must have a "common object" with the gang. However, Code § 18.2-46.2(A) contains no such language and, contrary to appellant's argument, this statute does not expressly require that the defendant have the same, specific objective of achieving rank within the criminal street gang. Furthermore, in this case, appellant participated "in association with" the Crips gang members when he acted with a shared intent to attack innocent people.

The testimony at trial established that appellant associated himself with the Crips members in order to attack innocent individuals – an intent shared by everyone in the group. One of the members of the group even declared, in response to a plea to stop one of the unprovoked attacks: "[W]e're goons, that's what we do." The trial court found this testimony

- 5 -

credible – as it was entitled to do as the factfinder. See Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). Moreover, no evidence compelled the factfinder to conclude appellant had any different reason for being with the group and participating in the attacks.[4] The trial court certainly could infer from appellant's statement after the attacks, "we beat his ass," that appellant shared the same general objective as the Crips gang members in this group of men who joined in these attacks. See Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010) (stating that an appellate court must defer "to any reasonable and justified inferences the fact-finder may have drawn from the facts proved"). As the trial court found, appellant was "acting in concert" with the Crips during these unprovoked attacks.

Further circumstances in the record support the trial court's finding of guilt beyond a reasonable doubt. See Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008) ("When a defendant challenges on appeal the sufficiency of the evidence to sustain his conviction, the appellate court has a duty to examine all the evidence that tends to support the conviction."). Appellant was present at a party where Crips members discussed "going on gang missions," and Bislimi told Crips members – in appellant's presence – that attacking people would improve one's "status in the gang." Appellant then participated in these attacks – and appellant's friend even provided appellant and the Crips with the means to leave the scene of those attacks.

---

[4] Investigator Wood's testimony – that Crips and Bloods do not usually work together – does not negate or outweigh the sufficient and ample evidence supporting the trial court's finding that members of the two rival gangs worked together in association with each other in this particular case. Rather, Investigator Wood's testimony is just one factor in the totality of the evidence, which clearly supports the trial court's finding of guilt. See Bowling v. Commonwealth, 51 Va. App. 102, 107, 654 S.E.2d 354, 356 (2007) ("[W]hen we consider the sufficiency of the evidence . . . we review the totality of the evidence to determine whether it was sufficient to prove an offense.").

The trial court could have reasonably inferred appellant was well-aware that he was interacting with Crips members – that he was not only associating with them, but also working to benefit them and at their direction. Appellant asserts that *he* gained nothing personally from the attacks. However, the plain language of Code § 18.2-46.2(A) does not require that *the defendant* benefit personally from the predicate criminal act – but instead provides, as one possible method of proof, that the predicate criminal act "benefit . . . any criminal street gang." In addition, the evidence proved that Bislimi, the leader of this gang of Crips, orchestrated the attacks that evening. Through Bislimi's directions, appellant knew whom to attack and where to be in order to participate in the attacks. Thus, it is evident that appellant's criminal acts that night were committed at the Crips' direction – through Bislimi, a Crips leader.

Therefore, "[v]iewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner, 268 Va. at 330, 601 S.E.2d at 57, a rational factfinder certainly could have concluded that the criminal acts appellant participated in here were committed for the benefit of, at the direction of, or in association with the Crips, a criminal street gang. Code § 18.2-46.2(A).

III. CONCLUSION

In this case, ample evidence supports the trial court's finding that appellant is guilty beyond a reasonable doubt of criminal street gang participation. Accordingly, for the foregoing reasons, we affirm this conviction.

Affirmed.